Fearnley v. De Mainville et al.

1. Contracts—Consideration.
If a benefit accrues to him who makes a promise, or loss or disadvantage to him to whom it is made, and accrues at the request or on the motion of the promisor, although without benefit to him, in either case the consideration is sufficient to sustain assumpsit.

2. Contracts against Public Policy Void.
Whenever a contract conflicts with the morals of the times, and contravenes an established interest of society, it is void. No right of action can spring out of an illegal contract.

3. Contracts—Consideration.
A contract by which one, in consideration of another's leasing to the government a building for a post office at a nominal rent, agrees to pay to the lessor a certain sum for each month of the term is valid, notwithstanding the purpose was to enable the lessor to outstrip other competitors for the location of the office at some other point.

*Appeal from the District Court of Arapahoe County.*

Mr. R. H. Gilmore, for appellant.

Mr. J. E. Havens, for appellees.

Reed, J., delivered the opinion of the court.

Appellees, in 1888, were the owners of a building in Leadville that had been used as a United States post office previous to that time. The lease was about to expire, and it

became necessary to make a new contract if the office was retained in the same building.

The United States government, feeling it absolutely necessary to exercise economy, without consulting the convenience of the people, required, as a bonus for mail delivery, that office room should be furnished gratuitously, or at nominal rent. For the purpose of retaining the post office in the building, and having to compete with other parts of the city, in September, 1888, appellees made a lease to the United States government for four years, at $1.00 per month. Property owners and business men in the immediate neighborhood, thinking their business would be benefited and increased by being within the shadow or influence of the government charitable institution, contributed to the rent. Appellant being a property owner in the immediate neighborhood, entered into the following contract with appellees :

"LEADVILLE, COLORADO, September 15, 1888.

"Frank De Mainville and W. H. Brisbane having offered to the government of the United States their store room in the De Mainville Block, in Leadville, Colorado, known as number 604 Harrison Ave., for the purpose of a post office for the term of four years at the nominal rent of one dollar per year.

"Now, if the said De Mainville and Brisbane shall conclude a contract with the proper department of the government for the purpose aforesaid, and upon the terms aforesaid and the post office shall remain in said building, for the purpose of reimbursing the said De Mainville and Brisbane for the loss of the rent of said room in consequence of said contract and in consideration of the premises, I hereby agree to pay to them fifteen dollars ($15.00) per month in lawful money of the United States, to be paid on or before the 12th day of each and every month during the term of four years, the first of said months

March     February

to commence on the first day of February, 1889.

"J. FEARNLEY."

It is alleged in the complaint that appellees made the lease to the United States government, and that it went into the possession, and still retained it as a United States post office; that appellant paid $15.00 per month under the contract from February, 1889, up to and including the month of January, 1891, when his payments ceased. On July 16, 1892, this suit was brought to recover the monthly payments due, amounting, as alleged, to $270.

The answer of the defendant (appellant) was rather peculiar, and for a full understanding of the supposed defense, it will be necessary to set it out in full:

" The defendant admits the execution and delivery of the papers mentioned in the complaint, called therein a ' writing obligatory,' but alleges the same was made without any consideration whatever, except the inducement offered to the defendant by the plaintiff De Mainville, as hereinafter more particularly mentioned and set forth.

" And the defendant, further answering, says: That the said alleged agreement, called ' writing obligatory ' in the complaint, is against public policy, and is null and void and of no binding force upon the defendant.

" And the defendant, by way of further defense, says: That prior to the 15th day of September, A. D. 1888, the defendant, being owner of certain real estate in the city of Leadville, had complained to members of the board of county commissioners of Lake county, on account of his being assessed and taxed excessively by the county of Lake, and that he was thereby being compelled to pay more than his due proportion of the taxes of the said county ; that the said plaintiff De Mainville was, at that time, chairman of the board of county commissioners of the said county ; that the defendant had, prior to the said 15th day of September, 1888, refused to sign the alleged agreement ; that he did not believe that location of the post office in the building owned by plaintiffs was of any benefit or advantage to the defendant, and he declined to assume any moral or legal liability on account thereof ; that the said post office was then and

for a long time theretofore located in the said building owned by the plaintiffs ; that the same was not located in the plaintiffs' building on account of the execution of the said contract, and the plaintiffs did not change or agree to change their condition in any manner whatever by reason of the execution thereof ; that after the defendant had repeatedly refused to sign the said contract, the plaintiff De Mainville came to the defendant and reminded him of his grievance in regard to the said assessment and taxation, and stated that he was convinced that the defendant was being assessed higher than he ought to be, and then and there proposed that if he, the defendant, would execute the agreement alleged in the complaint, he, as chairman of the commissioners, would see to it that defendant's taxes in Leadville, or the property owned by him were reduced in amount equal, at least, to the sum that the defendant would agree to pay in said alleged agreement. That the defendant relied in said proposition and promise of the plaintiff, and upon the said promise, and no other whatever, the defendant signed the alleged agreement."

The cause was tried to the court without a jury, resulting in a finding and judgment for plaintiff for $239.25.

The first contention of appellant's counsel is that there was no consideration to sustain the contract. The law of consideration is as well defined as upon any question arising in litigation. The following summary has not, as far as we are informed, ever been questioned : " The fundamental distinction in the common law is between those cases when the consideration is a benefit to him who makes the promise and those in which it is an injury to him who secures the promise. *For it is a perfectly well settled rule* that if a benefit accrues to him who makes the promise, or if any loss or disadvantage accrues to him to whom it is made, and accrues at the request or on the motion of the promisor, *although without benefit to* the promisor, in either case the consideration is sufficient to sustain assumpsit." 1 Parsons on Cont., 431 ; 2 Bl. Comm., 444 ; Comyn's Digest, Assumpsit, B. 1 ; *Pillans v. Van*

*Mierop*, 3 Burr. 1670; *Willatts v. Kennedy*, 8 Bing. 5; *Townsley v. Sumrall*, 2 Pet. 182; *Haines v. Haines*, 6 Md. 435.

The consideration moving appellant, as well as several others in the vicinity, to sign the contract, can be readily understood—that by the drawing of business to that center property would be increased in value, rents and business increased. Consequently the consideration was good for both causes: 1st, the benefits stated above were sufficient to maintain assumpsit under the promise. 2d, the renting of the building by appellees for a nominal rent for the benefit of the locality was an injury to them unless compensated by adjacent owners. Although counsel ably contends that there was no valid consideration, I do not know that I can do better than to quote from the argument of appellant's counsel made upon another branch of the case: " It appears from the evidence that the plaintiffs' property had been leased to the government as a post office, the first lease expiring August 12, 1888. The agents of the government came to Leadville to look over the ground, to select a site for a new location. They had ' five or six propositions ' before them, similar to the lease offered in evidence. The amount of rent proposed in the other propositions does not appear. The location offered by plaintiffs was ' *a little bit up town*, and it drew people from down town.' Mr. Callaway says in regard to this agreement: ' I presented that paper and got it signed by Mr. Fearnley myself. I wanted Fearnley to sign it, *because we were all signing it to get the post office up there.*' The fact that many interested parties signed papers similar to the one in suit, and that ' five or six propositions ' were made to the government, would indicate that there was some rivalry as to the location of the post office; and as usual in such cases, private advantage, and *not the good of the public,* was considered. The evidence makes it clear that a combination was formed among the property owners in the vicinity to secure the post office ' a little bit up town,' and the result was that the plaintiffs had, previous to the signing of the agreement

by Fearnley, offered their premises to the government for
$1.00 per year.". I do not think the question of considera-
tion requires further discussion.

The next contention is that the contract was void, being
against public policy. No principle of law is better settled
than that a contract prohibited by law or morality is void. It
rests and is embodied in the maxim "*Ex turpi causa non ori-
tur actio.*" In Story on Contracts, sec. 546, it is said, "that
whenever any contract conflicts with the morals of the times
and contravenes an established interest of society, it is void,
as being against public policy." In 2 Add. on Cont., 1138,
among the contracts enumerated as void, are "all contracts
prejudicial to the interests of the public, such as a contract
to prevent free competition, to influence improperly the per-
formance of public duties," etc. See *Hilton v. Eckersley*, 6
Ell. & Bl. 64; *Egerton v. Earl of Brownlow*, 4 H. L. C. 235.

Lord Brougham said: "By public policy is intended that
principle of the law which holds that no subject can lawfully
do that which has a tendency to be injurious to the public,
or is against the public good." *Egerton v. Earl of Brown-
low*, supra.

The trouble is not in the principle of law, but in its appli-
cation.

*First.* If, in this case, there was any contract where the
rule of law would apply, it must have been the contract of
leasing between appellees and the United States government,
to which appellant was not a party. His was a subsidiary or
collateral undertaking, entered into by several, to reimburse
appellees for losses to be sustained by them, with the expec-
tation of being reimbursed indirectly. I cannot see by what
course of reasoning counsel arrives at the conclusion that
the public had any interest in the contract between the
parties to this suit, or that it could in any way conflict with
public morality or contravene any statute. If it in any way
could be brought to be amenable to the legal principle, it
would simply be because it assisted appellees to make a con-
tract to which counsel thought the law might be made to

apply. I don't think a case can be found where courts have attempted to carry the law to this extreme length. If the contract was one the effect of which would be to corrupt the morals of the city of Leadville, appellant should have known it at the time the contract was made. After appellees had made their contract with the government, relying upon the secondary contracts to reimburse them, and the post office was located as desired by appellant, and he to derive all the expected benefits from such location, to repudiate his contract would seem to be a greater breach of morals than the one claimed on entering into it.

*Second.* The argument of counsel is largely devoted to the illegality of the contract between appellees and the United States government, and although the illegality of the contract sued upon is not argued, the deduction from the argument is that it has a secondary or collateral taint, by reason of its being an offspring or relation of the former. Of course, without that it would have had no existence, and unless the contract with the government had been consummated, the contract under review would have been void and inoperative. Counsel says: " There had been a former lease, expiring August 12, 1888. The agents of the government came to Leadville to select a site for a new location. *They had five or six propositions before them, similar to the lease offered in evidence. The location offered by plaintiffs was a little bit up town, and it drew people from down town.*" "This would indicate that there was some rivalry as to the location of the post office, *and as usual in such cases*, private advantage, and not the good of the public, was considered." This is all there is to taint the contract with fraud or illegality. Where does counsel get his data for the argument? It is not based upon any evidence. There is nothing to show that public good or convenience was disregarded; that there had been any complaint or protest. For all that appears, the building selected and the location may have been the most convenient and desirable of any in the city. How can counsel assume the position of champion for a people who

make no complaint of injury, and do not know they have been injured ?

Counsel says : " The court will take judicial knowledge that, in a city like Leadville, there can be but *one* post office ; hence the location in *one place* is a restriction upon its being located elsewhere." If the first premise is correct, the second is correct; and the court will take judicial · notice that one post office, unless perambulatory, must be .in one place ; but how is the court to know judicially that the one place selected was not the most desirable ?

It is a well known fact, of which courts will take judicial notice, that the government, in selecting sites for purchase for government buildings, and in renting private buildings for government use, induces competition, and takes the most advantageous offer, when each is supposed to be equally as desirable, looking to the convenience of the people. .And if there can be but one post office, and that only in one place, and there were five or six different sites offered, the selection of any one of them would, if the contention of counsel were adopted, vitiate any contract made and convict the general government and all who deal with it, all over the states, of fraud and entering into illegal and void contracts. The government of the United States cannot be so convicted unless made a party and given its " day in court."

Had the government ignored the business portion of the city, and selected an urban or suburban location, many of the cases cited might apply, where the contract was with a railroad corporation, where there was no public competition, and the contract was to locate in a certain place, and in many instances locate a depot outside of the town limits, and build up a new business center.

*Elkhart County Lodge v. Crary*, 98 Ind. 238, relied upon by counsel, in so far as he gives it, is more nearly parallel to the case under consideration than any other cited or that can be found. It was the case. of a post office. The citizens of Goshen required that the location be changed. Main and Market streets were competitors. The owners of the prop-

erty on Market street entered into a contract with the owner of the building to pay a certain sum annually for ten years if it would furnish the building to government free, or for a nominal rent, and made notes for the amounts. The court held the contracts and notes void, on the ground that the contracts were opposed to public policy; but there were two elements entering into that contract which are not found in this, that could readily be considered as conclusive, which are not noticed by counsel in his discussion, nor presented to this court. The first: " The postmaster was required by the government to furnish a room for the office and the rent was payable out of his salary." Second, in the language of the court: " The parties formed a combination for the purpose of securing the location of a public office, *and as a part of the plan, appellants undertook that certain individuals of their number should use their influence with the government officers to effect the purposes of the combination, and that the agreement to pay for such services was contingent upon the success of the scheme.*" Also: " They would use all proper persuasion to secure the location of the post office in their room." This was the controlling element in the case of the contract, *being the use of influence upon public officers to effect their purpose.*

It has been almost universally held that personal influence, which was the important element in that case, was not a commodity for which money could be collected. In that case the contract for the payment for personal influence was inseparable from the balance, and vitiated the contracts. In *Oscanyan v. Arms Co.*, 103 U. S. 261, it is said, at page 273: " But, independently of the official relation of the plaintiff to the government, the personal influence which he stipulated to exert upon another officer of the government was not the subject of bargain and sale. Personal influence to be exercised over an officer of government in the procurement of contracts, as justly observed by counsel, is not a vendible article in our system of laws and morals, and the courts of the United States will not lend their aid to the vendor to collect the price of the article." That important and controlling

factor in that case being wanting in this destroys its applicability. We do not think the contract void as opposed to public policy.

The remaining defense is unique and peculiar. It is, in effect, that although others entering into contracts with appellees, identical or similar in character, were to receive no extra compensation, appellant had a verbal and second contract, which is not embodied in the original sued upon, with De Mainville, one of the appellees, whereby he as chairman of the board of county commissioners of the county, and supposed to control the taxes of the county, should, in his official capacity, reduce annually appellant's taxes a sum corresponding in amount with the $15.00 per month he was to pay in the post office contract; setting up a different and independent contract from that executed, and upon which suit was brought. That paragraph of the answer should have been stricken out. If not, no evidence should have been admitted under it. The reasons are quite obvious.

*First.* It was only alleged to have been with De Mainville, while the contract was with both of appellees.

*Second.* It sets up his own turpitude and a conspiracy with the official to misapply public funds and appropriate them to his own use, a contract clearly against public policy, morals and common honesty. Courts cannot tolerate such proceedings, and certainly cannot enforce such contracts. It could not have been enforced, as it contravened two fundamental principles and maxims of the law : *First,* " A right of action cannot arise out of a fraud." " *Ex dolo malo non oritur actio.*" *Second,* " *In pari delicto potior est conditio defendentis.*" It is a well understood general proposition that an agreement to do an unlawful act cannot be supported at law ; that no right of action can spring out of an illegal contract.

" A court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of carrying into effect that which is prohibited by the law of the land." Broom's Leg. Max., 732 ; *Collins v. Blantern,* 2 Wils.

341; *Williams v. Bayley*, L. R. 1 H. L. 200 ; *Prole v. Wiggins*, 3 Bing. (N. C.) 230.

The proof admitted falls short of establishing the corrupt contract. In regard to the original contract, the witness Callaway testified: " I presented that paper and got it signed by Mr. Fearnley myself. I wanted Fearnley to sign it because we were all signing it to get the post office up there." It also appears that the letter in regard to the reduction of appellant's taxes was not written, as supposed, by De Mainville, but by Brisbane, who had no connection with the administration of county affairs. The corrupt contract was testified to by appellant. De Mainville testified: " I did not make to Mr. Fearnley any proposition to reduce his taxes $15.00 per month provided he would sign this paper." His term of office expired in a year, and it hardly seems probable that he would have made a contract extending three years after its expiration.

It is true that the evidence shows that his taxes were reduced the ensuing year. He said in evidence: " *The county commissioners* abated the valuation for 1888 $2,625," making it $6,650, where it had been $9,000 before that time, his taxes having been $700. That he had previously complained of excessive valuation and taxation. It may be remarked that De Mainville was only one member of a board of three, and was not chairman for that year. The other two commissioners were not connected with the alleged contract. Consequently his valuation may have been considered excessive, and reduced by the board in common with others.

For reasons given the judgment will be affirmed.

*Affirmed.*