SCHLITZ BREWING COMPANY, APPELLEE, v. HANS NIELSEN, APPELLANT.

FILED DECEMBER 21, 1906.   No. 14,574.

1. **Landlord and Tenant: RESTRICTIONS IN LEASE.** Where a lease provides that no beer, save of a particular manufacture, shall be sold on the premises, the fact that the excepted beer cannot be lawfully obtained does not annul the restrictive clause of the lease, when the fact that such beer could not be lawfully obtained was known to both parties when the lease was made.

2. **Lease: ENFORCEMENT.** Where such lease in itself is lawful and contravenes no requirement of public policy, and is supported by an independent consideration, the fact that the lessor is a member of a combination formed for the purpose of controlling the trade in some product is no defense to a suit to enforce the restrictive clause.

3. **Injunction.** Ordinarily, in a suit brought for that purpose, the plaintiff is entitled to an injunction without a showing of actual damages or that irreparable injury will result from a continued violation of the restrictive clause.

4. **Lease: ENFORCEMENT.** Although the lease provides that in case of a violation of the restrictive clause the rights of the lessee thereunder shall be forfeited, and although upon such violation plaintiff declares a forfeiture, yet, so long as the defendant refuses to recognize the forfeiture and remains in possession under the lease, his right to the use of the premises is to be measured by the lease, and the restrictive clause is enforceable against him.

Appeal from the district court for Douglas county: Alexander C. Troup, Judge.  *Affirmed.*

*I. J. Dunn,* for appellant.

*Rich, Searle & Clapp, contra.*

Albert, C.

On the first day of January, 1905, the Joseph Schlitz Brewing Company, plaintiff, and Hans Nielsen, defendant, entered into the following contract in writing: "This memorandum of agreement made and entered into this first day of January, 1905, by and between Hans Nielsen of Omaha, Nebraska, party of the first part, and the Joseph Schlitz Brewing Company of Milwaukee, Wisconsin, party of the second part: Witnesseth, that, whereas the said Joseph Schlitz Brewing Company has this day loaned to the said party of the first part the sum of $1,000, it is agreed and understood by and between the said parties hereto that the said sum of money is to be repaid by the said party of the first part to the said party of the second part in instalments of $24.50 each, due and payable weekly hereafter, the first of said instalments falling due on the second day of January, 1905; said sum so advanced to draw interest at the rate of — per cent. per annum from the —— day of —— 190—. And whereas the Joseph Schlitz Brewing Company has rented to the above party of the first part the saloon store and the storeroom adjoining the saloon now used as a baker shop and the south upstairs flat, the rent to be included in the above payment of $24.50.  The rent to be payable in advance and said party of the first part to pay all expense for water and light.   Adv. license and bond expense included. And in further consideration of the fact, the said party of the first part agrees, for the space of one year, to use no other beer than that manufactured and furnished by the said Joseph Schlitz Brewing Company.   And in case the

said party of the first part shall use at his place of business any other beer than that manufactured or furnished by the said Joseph Schlitz Brewing Company, without the written consent of the said Joseph Schlitz Brewing Company, then, in that case, the entire sum above advanced shall at once become due and payable, and all rights under this contract shall by the party of the first part be forfeited. It is further agreed that the said party of the first part shall pay for all beer sold and delivered to him at the following rates: Keg beer, $7 per bbl.; bottled beer, export quarts or pints, $3.75, with a rebate of $1.25 for each case of empty bottles returned subject to any rise in the general market price of said beer. The said party of the first part further agrees to pay for beer delivered to him during any one week upon the first Monday following the said delivery, and the failure of the party of the first part to pay any sum of money so due for beer delivered theretofore to him, shall at once forfeit all his rights under this contract, and all sums of money as above set forth shall at once become due and payable from the said party of the first part to the said Joseph Schlitz Brewing Company. In witness whereof, the said parties have hereunto set their hands and seals this 1 day of Jan., A. D. 1904. (sic.) Hans Nielsen, Jos. Schlitz Brg. Co., Otto Siemsen. Witness: D. Jensen."

At the time the contract was made the defendant was already in possession of the premises as tenant of the plaintiff and thereafter continued in possession by virtue of the foregoing contract. In May or June, following the making of the contract, he began to buy beer from other parties and to retail it on the premises in question. Whereupon the plaintiff, claiming a forfeiture of the lease, gave the defendant three days' notice to vacate the premises, declared the remainder of the instalments due, and brought a suit at law for the recovery of the entire amount. Afterwards the plaintiff brought this suit to restrain the defendant from selling any beer, other than that manufactured and furnished by the plaintiff, on the prem-

ises in question.   The trial court found for the plaintiff, and granted the relief prayed.   The defendant appeals.

It is admitted that the plaintiff is a corporation organized under the laws of the state of Wisconsin, and that it has become domesticated by the filing of its articles of incorporation with our secretary of state and complying with the requirments in that behalf.   It is also admitted that on the first day of January, 1905, a license was issued to the plaintiff by the authorities of the city of Omaha authorizing it to sell beer at its warehouse in that city, and that at the time of making the contract in question it was contemplated by the parties thereto that the sales of beer from the plaintiff to the defendant should be made in the city of Omaha.

One position taken by the defendant is that a license for the sale of intoxicating liquors cannot lawfully issue to a corporation, whether domestic or foreign, and, consequently, that the contract between the plaintiff and the defendant, so far as it contemplates a sale of beer from the former to the latter, is legally impossible of performance.   If this were a suit to compel the defendant to buy beer of the plaintiff in the city of Omaha, whether the plaintiff could lawfully sell beer there would be a pertinent question.   But this suit was not brought for this purpose.   In fact, the contract itself contains no clause expressly requiring the plaintiff to furnish beer to the defendant.   It merely fixes the price which the defendant shall pay for such beer as the plaintiff may furnish to him.   If, as the defendant contends, the plaintiff cannot lawfully make a sale of beer in the city of Omaha, and cannot be lawfully licensed to make such sale, both parties must be presumed to have been aware of that fact when the contract was made, and to have contracted with reference to it.   In other words, if the defendant's construction of the license law be correct, he knowingly bound himself to sell no beer on the premises, save such beer as he could not lawfully obtain.   The suit is not to compel him to buy beer contrary to law, but to restrain him from selling

beer contrary to the terms of his lease. It would have been perfectly competent for the parties to stipulate that no beer whatever should be sold on the premises. It was equally competent for them to provide that no beer except of a particular kind or quality should be sold thereon. And if it turns out that the beer exempted from the restrictive clause cannot be obtained, especially where the parties at the time they made the contract knew that it could not be lawfully obtained, that fact would not operate to annul the restrictive clause.

Another position taken by the defendant is that the plaintiff at the time of making the contract was a member of a trust, as defined by section 1, ch. 91a, Comp. St. 1903, which was formed for the purpose of controlling the trade in brewery products in the city of Omaha, and that the contract therefore is not enforceable. In the first place, this is not a suit to enforce the entire contract, but merely to restrain the defendant from a continued violation of a restrictive covenant of his lease. The contract itself is not unlawful and contravenes no requirement of public policy. It is supported by an independent consideration. That being true, if, as claimed by the defendant, the plaintiff was a member of a trust, the agreement between the members thereof was only incidentally or indirectly connected with the contract in suit, and does not taint the latter with illegality or make it contrary to public policy. *National Distilling Co. v. Cream City Importing Co.*, 86 Wis. 352; *Fearnley v. De Mainville*, 5 Colo. App. 441; *Phalen v. Clark*, 19 Conn. 421, 50 Am. Dec. 253; *McDearmott v. Sedgwick*, 140 Mo. 172, 39 S. W. 776.

It is insisted that the plaintiff has failed to show that it has no adequate remedy at law or that irreparable damage would result from a continued violation of the restrictive covenant, and therefore that it is not entitled to the writ. In 4 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1432, referring to the enforcement of covenants of this character, the author says: "The injunction in this class of cases is

granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that the plaintiff has sustained *any* pecuniary damages, are wholly immaterial. In the words of one of the ablest of modern equity judges: 'It is clearly established by authority that there is sufficient to justify the court interfering, if there has been a breach of the covenant. It is not for the court, but the plaintiffs, to estimate the amount of damages that arises from the injury inflicted upon them. The moment the court finds that there has been a breach of the covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract, although his remedy is that which I have described,' namely an injunction." In 2 High, Injunctions (4th ed.), sec. 1142, it is said: "And where a lessee is, by the terms of his lease, restricted to a particular use of the demised premises, equity will restrain him from other use of them, even though no irreparable injury be shown to result from such breach of covenant. The interference in such case is based upon the ground that, while there is a remedy at law for breach of the covenant on the part of the lessee, a new suit would have to be brought daily for each daily repetition of the offense, and an injunction is therefore necessary to prevent a multiplicity of suits, as well as on the ground of the great difficulty in estimating damages at law for such a grievance." In this case the plaintiff has established the terms of the contract or lease, and the violation of the restrictive clause is admitted. Those facts, in the light of the authorities just quoted, entitle it to relief by injunction.

It is contended that, as the contract contains no express agreement on the part of the plaintiff to furnish the defendant with beer of its own manufacture, the contract lacks mutuality and is not enforceable. The contract as a whole is supported by a sufficient consideration. The covenant in question is a mere restriction on the use of the premises by the defendant. He took the lease subject to

that restriction. The parties had a right to make a contract to suit themselves. The plaintiff had a right to provide that premises owned by it, whether used for the sale of its own products or not, should not be used to extend the trade of its competitors. If, then, the contract does not obligate the plaintiff to furnish the defendant with beer, it is still the contract of the parties, and its enforcement requires the defendant to do or abstain from nothing which he did not voluntarily undertake to do or abstain from doing.

Another contention of the defendant is that the plaintiff, having declared a forfeiture and brought an action at law for the recovery of the whole amount of the deferred instalments, cannot maintain this suit to enforce the restrictive covenant of the lease. That this contention may be understood, we take the following from the defendant's brief: "The contract provided the penalty which the defendant would be subjected to if he failed to perform the contract; that plaintiff should have the right to recover all of the unpaid portion of the $1,000 advanced by it, at once, and to recover possession of the premises from the defendant. It pursued both remedies by commencing suit for the remainder of the $1,000 and giving the defendant notice to quit the premises. Furthermore, the contract did not leave it to plaintiff's option, but provided absolutely that all of the defendant's rights under the contract should be forfeited and immediately cease upon his failure to live up to its terms. He violated the contract; therefore, according to its terms, the contract immediately came to an end, so far as defendant's rights were concerned. Plaintiff, in addition, elected to pursue its remedy at law. * * * It would be a strange rule of law that would permit one party to declare the contract at an end and to claim the penalty named in the contract in a court of law, and then permit him to pursue the remedy of requiring specific performance in a court of equity." There would be great force in this contention, if the contract would admit of the construction that the exaction of

the penalty there imposed for the doing of the forbidden act was intended by the parties as an equivalent for the privilege of doing that act. 2 High, Injunctions (4th ed.), sec. 1139. But manifestly such was not the intention of the parties, because by the very language of the covenant the exaction of the penalty would not only prevent the doing of the forbidden act, but would terminate the defendant's right to use the premises for any purpose. The rule is that, where the covenant is absolute in its terms, and a penalty is attached to insure the faithful performance of the obligations thereby imposed, the exaction of the penalty will not deprive equity of its jurisdiction to restrain the commission of the forbidden act. Section 1139, *supra*. A *fortiori* a mere attempt, as in this case, to exact the penalty would not deprive it of such jurisdiction.

Nor does the doctrine of an election of remedies apply. That doctrine cannot be successfully invoked against a party, unless it appear that he has pursued one of two coexisting remedies, so inconsistent that the choice of one necessarily amounts to an abandonment of the other. *State v. Bank of Commerce*, 61 Neb. 22. Here, although the plaintiff declared a forfeiture and commenced its action at law for the recovery of its debt, the defendant ignored the notice to vacate the premises and retained the possession which it had obtained under and by virtue of the lease. So long as he thus retains possession, his rights with respect to the use of the premises are to be measured by the terms of that instrument. It would be a remarkable rule that would give a tenant in possession under a lease which he had forfeited greater rights than he would have had, had he kept his covenants. It does not seem to us that an attempt to enforce a forfeiture is in any way inconsistent with a suit to compel the tenant to observe the restrictive covenants, so long as he resists the forfeiture and retains possession under the lease.

In our opinion, the record shows that the plaintiff was

entitled to the relief granted, and we recommend that the decree be affirmed.

JACKSON, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.