VOIGT BREWERY CO. *v.* HOLTZ.

1. LANDLORD AND TENANT — INJUNCTION — INTOXICATING LIQUORS.
  Having an adequate remedy at law, a brewing company which leased premises to a saloon keeper on condition that he should not purchase beer from any other party, is not entitled to an injunction against the saloon keeper to restrain him from buying beer from other manufacturers as the exigencies of his trade required, when it appeared that the tenant sold the lessor's beer as his principal commodity, and secured permission orally from defendant to sell the beer of other wholesale dealers as it might be called for, and that the amount of other beer so purchased was small and the probable damages inconsiderable.

2. SAME—FRAUDS, STATUTE OF—LEASE—PAROL WAIVER—EQUITY.
  A waiver, invalid because not in writing, of conditions contained in a lease for a term of years, may be treated as an equitable estoppel to enjoin a breach of the written instrument.

Appeal from Wayne; Murfin, J.   Submitted November 21, 1911.   (Docket No. 150.)   Decided January 23, 1912.

Bill by the Voigt Brewery Company against John Holtz for an injunction.   From a decree dismissing the bill, complainant appeals.   Affirmed.

*Orla B. Taylor* and *Charles F. Delbridge*, for complainant.

*Clark, Lockwood, Bryant & Klein*, for defendant.

STEERE, J.   Complainant is a Michigan corporation located in the city of Detroit and engaged in the brewery business; the purchasers of its products being mostly saloon keepers in that city.   The defendant is one of its customers, being the keeper of a saloon at Nos. 159 and 161 East Fort street, Detroit, which premises he occupies under a five-year lease from complainant, bearing date April 13, 1908.

This bill of complaint was filed on April 5, 1911, to enjoin defendant from violating the following clause in said lease:

" And as a further consideration, the party of the second part does hereby expressly covenant and promise to conduct and carry on in and upon said premises a saloon business in a respectable manner and to buy or cause to be bought of and from the said party of the first part, Voigt Brewery Company or its successors, and from no other person or persons, all the beer sold, used or consumed in and upon said premises in bulk as well as in bottles, and to pay or cause to be paid therefor on the delivery thereof its regular market price.   The party of the first (part) or its representative shall have the right to inspect any and every part of the premises at any reasonable hour."

A preliminary writ of injunction was granted according to the prayer therefor in complainant's bill, but on final hearing the trial court held that complainant had an

adequate remedy by either summary proceedings before a commissioner, which it had already instituted, or in an action at law for damages, basing his decision squarely upon the case of *Hardy* v. *Allegan Circuit Judge*, 147 Mich. 594 (111 N. W. 166, 10 L. R. A. [N. S.] 474, 118 Am. St. Rep. 557), and dismissed said bill.

On March 21, 1911, about two weeks prior to the filing of this bill, complainant obtained a judgment of restitution before a circuit court commissioner, under statutory, summary proceedings, from which judgment defendant appealed to the circuit court, giving the usual bond for payment of rent.

It appears that at the time of making the lease in question, and for some time before, defendant was owner of a property at the corner of Forest and Wabash avenues, in Detroit, where he was engaged in running a saloon. This property he leased to complainant, and transferred his business to Fort street, occupying the same originally under a parol lease, engaged in running a saloon, grocery, and meat market business combined; the parties in effect exchanging the use of their two locations. This arrangement was continued by a subsequent exchange of leases A and B; the dates, rate of rent, and term of years being the same in each lease. Each party, therefore, became both landlord and tenant of the other, and each still has possession of the property leased from the other. This controversy, however, only directly relates to defendant's conduct of his business under complainant's lease to him. He admits that he has not fully complied with its terms in the particular that he has, since July 10, 1910, bought from wholesalers, other than complainant, some of the beer sold by him in the saloon conducted on said premises.

It is his claim that on said date a supplemental agreement was made relaxing the restrictive clause in his lease, authorizing him to purchase and retail other kinds of beer, to meet the existing demands of his trade. His evidence shows that after he went to Fort street the character of the surrounding population changed from German,

French, and English speaking people to an Italian community, affecting his trade detrimentally, to the extent that he was forced to give up the meat and grocery business which he had conducted in connection with his saloon, and that the tastes and demands of many of his new customers were for other kinds of beer than that made by complainant; that, as a result of such developed conditions, he, on July 10, 1910, had an interview with Mr. Voigt, the president and general manager of complainant, in which he informed Mr. Voigt fully of the situation, told him that he could not, under existing conditions, profitably continue even the saloon business, and that he intended to quit, proposing in that connection to sell to complainant his fixtures; that, as a result of such talk and negotiations on that subject, Mr. Voigt prevailed on him to continue his saloon, and authorized him to buy from other dealers, and retail to his trade, other kinds of beer, when there was a demand for it, telling him to push the Voigt beer, but to give customers what they wanted when they called for it; that he accordingly did continue his saloon business, dispensing some Tivoli, Pabst, and Stroh beers, which he bought from the manufacturers, but only when called for, giving his customers Voigt beer, unless they expressed other preferences; that what he sold of other brands was mostly bottled beer, and the amount sold, between July 10, 1910, and the commencement of this suit, would not exceed in value the sum of $50.

Mr. Voigt, in his testimony, admitted such conversation and notice given to him as to a change in the character of the business in that locality, together with defendant's declaration of intention to abandon the business as unprofitable; that as a result concessions were made relative to the sale of other beer, but he claims that this took place in September, 1910, and permission was only given to sell Tivoli beer in bottles.

The undisputed evidence shows that after July 10, 1910, defendant was openly dispensing, when called for,

other beer than complainant's, and that Mr. Voigt was well aware of it, having himself drank other brands of beer in the place. The testimony discloses no objections made during the summer, or until about the time summary proceedings were instituted to oust defendant. The testimony shows conclusively that under the changed conditions complained of by defendant, and known to complainants, permission was given to dispense other brands of beer, as an inducement for defendant to continue the business. The date and exact scope of that permission is in dispute.

It is the claim of complainant that whatever concessions may have been made, they were oral, gratuitous and void under the statute of frauds, the conditions as to the sale of complainant's beer being in writing, not to be performed within a year and in connection with the transfer of real estate interests; that summary proceedings to oust defendant or an action to recover damages for breach of contract do not furnish an adequate remedy at law, the defendant having appealed from the judgment in the summary proceedings, and being yet in possession of the property, conducting his business in violation of the conditions of his lease, and that in the very nature of things it would be impossible to ascertain, in a suit to recover damages, how much more of complainant's beer would have been sold providing defendant sold no other beer.

It is the claim of defendant that a waiver of the condition in his said lease was made under such circumstances as to constitute a binding agreement, based on a valid consideration, maintainable in a court of chancery; that complainant has an adequate remedy at law and has elected its remedy by declaring the lease forfeited and instituting summary proceedings to regain possession of the property; that the condition is void for want of mutuality, and the contract, being in restraint of trade, is against sound public policy.

A parol waiver of the conditions in a written lease for a term of years, which would be invalid if unwritten, can-

not be enforced in a court of law; but, considered in a court of chancery, this permission, given to defendant by complainant, to ignore the strict terms of his lease, and sell other beer when it was called for, to meet the demands of the trade and bolster up a declining business, in which complainant's beer is the chief commodity, if acted upon and carried out in good faith, points strongly to an equitable estoppel, where an injunction is asked which would operate, to all intents and purposes, as a decree for specific performance.

Taking the evidence of defendant as true, and it is undisputed, the injury complained of is neither irreparable nor great. From July 10, 1910, to the time of filing this bill, the other beer bought by defendant, including 3 barrels in bulk, did not exceed $50 in value, during which time he bought one-half barrel per day of complainant's beer. For 26 days in the month that would amount to 13 barrels, or 130 barrels for the 10 months. He pushed the sale of complainant's beer, and only bought and sold other brands as the exigencies of his trade demanded.

In the cases cited by complainant's counsel, where injunctions were granted for breach of similar lease conditions, the violations were hostile, extensive, and inexcusable, without color of right or equitable circumstances.

Counsel for complainant urge that the issue now before us was not involved in *Hardy* v. *Allegan Circuit Judge*, 147 Mich. 594 (111 N. W. 166, 10 L. R. A. [N. S.] 474, 118 Am. St. Rep. 557), by which the trial court was governed in dismissing the bill, and point out the distinction that in said case the brewing company was not the owner or lessor of the premises to which the covenant related, but only a mortgagor, the court properly ruling that equity would not enjoin selling beer contrary to the terms of the mortgage, as the contract was purely personal and such sales would not lessen the mortgage security, while in the case at bar complainant is lessor of the premises, and the covenant appertains to land, thus giving the right of injunction to restrain violation of conditions relative to its use.

It is manifest that the *Hardy Case* is to be distinguished from the one at bar in the particular mentioned, and, had the decision been confined to, and based on, that reason, it would not be of controlling importance here; but the court held, as a further ground for the decision, that a court of equity will not interfere where the interest of complainant in a breach of covenant involves only profits in beer sold on the premises, but leaves the aggrieved party to his remedy at law, which is adequate.

As controlling precedents which should govern the disposition of this case, counsel for complainant cite and rely on the cases of *Ferris* v. *Brewing Co.*, 155 Ind. 539 (58 N. E. 701, 52 L. R. A. 305), and *Schlitz Brewing Co.* v. *Nielsen*, 77 Neb. 868 (110 N. W. 746, 8 L. R. A. [N. S.] 494). Those cases squarely hold that injunction will be granted to restrain breach of covenant in a lease where a lessee has contracted to sell no other beer on the leased premises than that manufactured by a designated company; applying to a particular article, handled in a particular business the general rule that a covenant by a lessee not to carry on a particular business, or not to carry on any business, except the certain one named, upon leased premises, is binding, and a violation thereof may be restrained by injunction. The *Hardy Case* cannot be reconciled with these authorities, although it can be said that it might have been decided on grounds not in conflict with them.

In discussing certain cases analogous to those cited by complainant's counsel, among which was the *Ferris Case*, the court said:

"There is, however, this difference: That in each of these cases the restrictive covenant was inserted in a conveyance by the owner of the property. I doubt, however, if this difference distinguishes those cases from the case at bar; for there the injunction seems to have been sought and granted for no other purpose than to insure to a brewer the profits from the sale of his beer."

"Such covenants are enforced by injunction, because their breach tends to the destruction of a business, and

the remedy at law for damages is therefore inadequate. The reasoning does not apply where the damages are the profits of the beer sold on the premises."

The court further said:

"We may profitably consider the consequences, if courts enjoin the breach of such contracts. If the court enforce by injunction the agreement of an owner of property that there shall not be sold thereon the products of any rival of a certain manufacturer or dealer, it thereby stamps what is equivalent to a trust upon that property, and gives manufacturers and dealers a power to place fetters on individual and industrial freedom which self-interest will impel them to use for their own aggrandizement. The protection of their own interest does not require that they should possess any such extraordinary power, for their remedy at law for damages is entirely adequate. I think reason and authority, and the best interests of society, require us to say that they must be content with that remedy."

The undisputed testimony shows that complainant had secured a lease of the property in question, to re-lease it to the defendant, paying the same rent it received from him; the deal working out by the exchange of leases, as heretofore stated. Mr. Voigt testifies that the main consideration of complainant was the selling of its beer in the place, "because we only rent such places to sell our beer." The damages involved are the profits of the beer sold on the premises.

This court is not committed to the rule that a court of chancery will interfere by injunction, which must necessarily operate as a decree for specific performance, to enforce contracts to sell a particular brand of beer, where the only purpose is to insure a brewer his profits arising from such sale. To do so would be for the court to undertake the work of supervising, directing, compelling the performance of, in effect governing by injunction, private contracts between parties engaged in the liquor traffic (a business by sufferance), which contracts might, and often do, extend over a term of years.

Under the general equities of this case as disclosed by the testimony, which are not with complainant, and in harmony with the views expressed in the *Hardy Case*, we are constrained to hold that equitable relief should not be granted, and to leave complainant to the remedies provided by law.

The decree of dismissal is affirmed, with costs.

MOORE, MCALVAY, BROOKE, and BIRD, JJ., concurred.