CELLI & DEL PAPA v. GALVESTON BREWING CO. (No. 6977.)

(Court of Civil Appeals of Texas. Galveston. March 30, 1916.)

1. LANDLORD AND TENANT ⬤�then134(2)—AGREEMENTS AS TO USE OF PROPERTY.

The right of the owner of premises to agree with his tenants as to the use to which the leased premises shall be put is one of the inherent rights incident to the ownership of property, and is only restricted to the extent of forbidding any agreement to use the property for an unlawful purpose.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 483; Dec. Dig. ⬤➾ 134(2).]

2. LANDLORD AND TENANT ⬤➾134(2)—AGREEMENT AS TO USE OF PREMISES.

When premises are leased to be used as a place for conducting a business, the owner can stipulate the character of lawful business which is to be carried on, and, if the business is a mercantile one, the character or specific kinds of merchandise that may or may not be sold on the premises, and a brewery, leasing premises for saloon use, may stipulate that the tenants shall not buy beer of a competitor.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 483; Dec. Dig. ⬤➾134(2).]

3. MONOPOLIES ⬤➾12(2)—AGREEMENT AS TO USE OF PREMISES—STATUTE.

It was not the purpose of the anti-trust statute (Vernon's Sayles' Ann. Civ. St. 1914, art. 7796) to prohibit or restrict the right of the owner of leased premises to stipulate the character of business which shall be carried on and the kinds of merchandise that may be sold, and a brewery leasing premises for saloon use may stipulate that the tenants shall not buy beer of its competitor.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. ⬤➾12(2).]

4. MONOPOLIES ⬤➾12(2)—CONSPIRACY IN RESTRAINT OF TRADE—STATUTE.

The act of a brewing company in demanding of tenants of its saloon premises that they cease purchasing beer and other liquors from a competitor of the brewery under penalty of not having their leases renewed was not a violation of Vernon's Sayles' Ann. Civ. St. 1914, art. 7798, defining and prohibiting conspiracies in restraint of trade.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. ⬤➾12(2).]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by Frank Celli and O. Del Papa, composing the firm of Celli & Del Papa, against the Galveston Brewing Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Lewis Fisher, Marsene Johnson, Elmo Johnson, and Roy Johnson, all of Galveston, for appellants. James B. & Charles J. Stubbs and Marion J. Levy, all of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by appellants, Frank Celli and O. Del Papa, composing the firm of Celli & Del Papa, against the appellee to recover damages in the sum of $20,000—$9,000 actual and $11,-000 exemplary damages.

Plaintiffs' petition alleges, in substance, that during the months of June, July, and August, 1913, and for some time prior thereto, they were and still are engaged in the wholesale liquor business in the county of Galveston, and as such dealers handled and sold at wholesale spirituous, vinous and malt liquors, and that at said time the Galveston Brewing Company was and still is engaged in the manufacture and sale of beer at wholesale in the city of Galveston. The cause of action is set out in the petition as follows:

"And plaintiffs further allege that continuously and almost daily in the months of June, July, and August, 1913, in said county of Galveston, state of Texas, the defendant corporation did unlawfully, willfully, maliciously, and with express intent to injure the business and profits of plaintiffs induce, persuade, threaten, and coerce A. Guisti, D. Guisti, A. B. Coleman, A. Del Papa, Albert Lasson, Ugo Bianche, A. Martini, F. Paganucci, A. Mangiapana, G. Del Papa, A. Menicuci, H. Marcella, N. S. Patrick, and many other persons to make, enter into, maintain, and execute and carry out, and attempt to execute and attempt to carry out, a certain obligation and agreement to prevent and lessen competition in the sale and purchase of a certain commodity and merchandise, to wit, beer, in said county of Galveston.

"And plaintiffs further allege that said corporation' did unlawfully, willfully, maliciously, and with the express intent to injure the business and profits of plaintiffs, continually and almost daily, in said months of June, July, and August, 1913, induce and did persuade and did coerce and did threaten and did conspire with and did cause the persons named in the preceding paragraph, and many others, to make, enter into, maintain, execute, and carry out an obligation and an agreement by which the parties thereto did bind themselves not to buy or sell any of the spirituous, vinous, or malt liquors handled and kept for sale by the plaintiffs, and

did by said unlawful and malicious conduct preclude a free and unrestricted competition among themselves and others, in the sale and purchase of the said articles of merchandise, kept in stock and offered for sale by said plaintiffs, especially a certain article, commodity, and liquid product known as Cook's beer, the same being lager beer, and the same being offered on the market for sale by the said plaintiffs during said months.

"And plaintiffs further allege that continuously and almost daily during said months of June, July, and August, 1913, the defendant corporation unlawfully, willfully, and maliciously, and with the express intent to injure the business and profits of plaintiffs, did induce, did persuade, and did coerce the persons named in paragraph 2 of this petition, and many other persons, to boycott, and to agree to boycott and to refuse and to agree to refuse to buy from plaintiff, any of said legitimate merchandise, to wit, the said Cook's beer, and any of the other liquors and merchandise kept in stock for sale by said plaintiffs during said months.

"And plaintiffs further allege that at the time of the beginning of said unlawful and said malicious acts and conspiracies on the part of the defendant corporation with the persons named in paragraph 2 of this petition, and with many other persons, the said plaintiffs were engaged in selling at wholesale, a certain commodity known as Cook's beer, the same being lager beer, and were in the months of June and July realizing a profit from the sale of said beer in the approximate sum of $350 per month, and that on account of said unlawful and malicious conduct of the defendant corporation in inducing, threatening and persuading the said persons named in paragraph 2 of this petition, and many others, to boycott and to refuse to buy said beer from these plaintiffs, and to refuse to handle said beer in any way, the plaintiffs' business in the sale of said beer depreciated to such an extent in the month of August, and continually during all of said months from said month of August up to the date of filing of this petition to the extent of $350 per month."

These allegations are followed by allegations of the actual loss sustained by plaintiffs in the decreased profits derived from their business by reason of the alleged wrongful and illegal acts of the defendant before alleged, and by prayer for the recovery of actual and exemplary damages in the sums before stated.

The defendant answered by general demurrer, special exceptions and general denial, and the following special plea:

"Defendant alleges the truth to be that plaintiffs endeavored to deprive defendant of the patronage of its customers, being those named by plaintiffs in their petition, and others, and to that end sold or endeavored to sell to defendant's said customers beer other than that manufactured by defendant, thus seeking to supplant defendant and destroy its business with its said customers; that defendant thereupon endeavored to retain the patronage of its customers as against the aggressions of plaintiffs, and this it is ready to verify."

The demurrer and exceptions were overruled, and the cause proceeded to trial with a jury. After hearing the evidence the trial judge, on motion of defendant, instructed the jury to return a verdict in defendant's favor, and upon the return of such verdict judgment was rendered in accordance therewith.

The only assignments of error presented in appellants' brief assail the action of the court in instructing the jury to return a verdict

for the defendant. The contentions under these assignments are that the undisputed evidence shows that defendant did, as alleged in the petition, "unlawfully, willfully, and maliciously * * * induce, persuade, and threaten the persons named in the petition, and many others, to boycott and to refuse to buy from plaintiffs any of the merchandise offered for sale by plaintiffs, and did enter into and cause to be made a conspiracy with the persons named in plaintiffs' petition to boycott these plaintiffs and to refuse to buy from these plaintiffs," and that such conduct on the part of the defendant was in violation of the anti-trust laws of this state, and rendered defendant liable for the damages thereby caused the plaintiffs.

The evidence shows that each of the persons named in plaintiffs' petition was a tenant of defendant engaged in the retail liquor business in Galveston county. Each of said persons during the months named in the petition purchased and sold beer manufactured by defendant, and also handled in their business other kinds of beer, among which was Cook's beer, which was sold by plaintiffs. During the months named each of said persons was notified by the defendant, through its general manager, that he must quit selling Cook's beer, and several of said persons were told that, unless they stopped selling said beer, and also stopped buying liquors of any kind from plaintiffs, defendant would not renew the lease of the premises upon which they conducted their business. Because of the fear on the part of each of said persons that he would not be permitted to re-lease the premises on which his business was conducted at the expiration of his existing lease, he unwillingly agreed to quit selling Cook's beer, and did stop selling it. The profits of plaintiffs' business were largely decreased by reason of the compliance of the persons named in the petition with the demand of the defendant to cease selling Cook's beer and quit buying liquors from plaintiffs.

The following testimony of A. Del Papa, one of the "conspirators" named in the petition, is a sample of the testimony introduced by the plaintiffs, and which was uncontradicted:

"I am not related to Omera Del Papa. I am engaged in the saloon business, and was in June and July of 1913. I buy my beer from Galveston Brewing, Anheuser Busch, and Schlitz. I bought one case from Celli & Del Papa. I had a talk with Mr. Stein about Celli & Del Papa. He told me to quit Celli & Del Papa, and would have to quit selling Cook's beer. I agreed with him to stop selling it. I told him I would stop it because I was scared of them; scared they would put me out of business—the Galveston Brewery. I was scared because he had a lease on the house, and I was afraid somebody would put me out of business; that I had better quit. I was afraid Stein would put me out of business. I was in Mr. Stein's office when he talked to me about quitting Celli & Del Papa. He phoned me to come over, and I went. He told me I had to quit selling Cook's beer, and I told him 'All right.' I sell what I had and I would not buy

any more. I have not bought any more since because he told me I could not. He told me I would have to stop. I told him I would stop. I have had another talk with Mr. Stein since. He called me to his office and told me I had to quit buying whisky and buy nothing else from Celli & Del Papa. He told me if I didn't stop he would put somebody else in the business at my place. I quit them for a while because I thought he would put somebody else in my place. I rent from month to month. I have no lease on the place. I don't pay rent from Galveston Brewery. I don't know if Galveston Brewery have a right to say who shall keep or occupy that building. Mr. Stein told me not to buy any more beer from Celli & Del Papa. I had bought one barrel. He talked to me a second time, and said I had to quit buying whisky, and not to buy anything else from Celli & Del Papa. I told him if everybody quit I would quit myself. Mr. Stein told me if I didn't quit buying from Celli & Del Papa he would put somebody else in the place. I kept on buying whisky from Celli & Del Papa. Mr. Stein asked me not to buy from Celli & Del Papa as long as they were fighting him—as long as Celli & Del Papa were selling beer to his tenants."

Plaintiffs did not commence the sale of Cook's beer until June, 1913. The demands made by the defendant upon their tenants to cease handling Cook's beer were made in the months of June and July, 1913.

It is perfectly clear from all the evidence that the premises leased by the defendant to the persons named in plaintiffs' petition, and with whom defendant is alleged to have conspired to injure and boycott the business of plaintiffs, were purchased or leased by defendant for the purpose of furthering the sale of the beer manufactured by it, and that the purpose and effect of the agreements between defendant and said persons to whom it leased said premises was to prevent the sale on said premises of the beer handled by plaintiffs and which was not manufactured by defendant.

[1] The right of the owner of premises to agree with his tenants as to the use to which the leased premises shall be put is one of the inherent rights incident to the ownership of property, and is only restricted to the extent of forbidding any agreement to use the property for an unlawful purpose.

[2] When premises are leased to be used as a place for conducting a business, the owner can stipulate the character of lawful business which is to be carried on, and, if the business is a mercantile one, the character or specific kinds of merchandise that may or may not be sold on the premises.

[3] We do not think it was the purpose or intent of our anti-trust statute to prohibit or restrict this right of the owner of property, and the exercise of such right by the owner through agreement with his tenant cannot be held a violation of the provisions of article 7796, Vernon's Sayles' Civil Statutes, pro-

hibiting "combinations of capital, skill or acts by two or more persons to create, or which may tend to create, restrictions in trade or commerce." In the case of Railway Co. v. State, 99 Tex. 34, 87 S. W. 336, 70 L. R. A. 950, our Supreme Court held that a contract between a railroad and a sleeping car company that only sleeping cars manufactured by said company would be operated over said railroad was not violative of the provisions of the anti-trust statute, and in Lewis v. Railway Co., 36 Tex. Civ. App. 48, 81 S. W. 111, the same ruling was made in regard to a contract by which a railroad agreed to give to a transfer company the exclusive right to solicit patronage on its trains. In the case of Redland Fruit Co. v. Sargent, 51 Tex. Civ. App. 619, 113 S. W. 331, it is held that a provision in a contract of lease of premises as a place for the sale of merchandise that intoxicating liquors should not be sold on the premises was valid.

It seems to us that, if the owner of the leased premises can stipulate that no beer can be sold thereon (and that the owner has such right cannot be questioned), it necessarily follows that he can stipulate that only a certain kind of beer can be sold thereon. This is the holding in the case of Brewery Co. v. Nielsen, 77 Neb. 872, 110 N. W. 747, 8 L. R. A. (N. S.) 497, in which the Supreme Court of Nebraska say:

"It would have been perfectly competent for the parties to stipulate that no beer whatever should be sold on the premises. It was equally competent for them to provide that no beer, except of a particular kind or quality, should be sold thereon."

[4] Appellants' contention that the act of defendant in demanding of the persons named in the petition that they cease purchasing beer and other liquors from plaintiffs under penalty of not having their leases renewed was in violation of article 7798 of the statutes above cited, defining and prohibiting conspiracies against trade, is, we think, just as untenable as the contention that such act on the part of defendant was violative of article 7796, before quoted.

The acts of defendant refusing to permit his tenants to sell plaintiffs beer upon the premises leased by him to said tenants not being unlawful or wrongful, plaintiffs were not entitled to recover damages for any loss in business they may have sustained by reason of such acts of defendant, and the trial court properly instructed the jury to return a verdict in defendant's favor.

It follows from these conclusions that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.